NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-10

COMMONWEALTH

vs.

JOSE CORREA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On March 28, 2024, a jury found the defendant guilty of all twelve charges relating to the distribution of controlled substances and unlawful possession of firearms leveled against him.  On appeal, the defendant contends that (1) the judge erred in allowing an officer's narration describing the content of a video recording in evidence, (2) the judge erred in allowing an expert police witness's testimony regarding characteristics of drug distribution, and (3) the testimony of a Department of Criminal Justice Information Systems (DCJIS) employee was insufficient to establish that the defendant did not have a firearm license.  We affirm.

Discussion.  1.  Video recording testimony.  At trial, the Commonwealth entered into evidence two video recordings of the defendant running away after the police arrived at 23 King Street to execute a search warrant, and three photographs taken of images depicted in the second video recording.[1]  The second video recording, at issue here, shows the defendant running through an alley.  Over the defendant's objection, the prosecutor asked Officer Anthony Correa to describe the three images taken from the second video.  Officer Correa had been chasing the defendant but did not personally witness him running through the alley.  Officer Correa testified that the first image depicted a pathway between 53 Queen Street and 55 Queen Street with the defendant as he appeared shortly before and after the events of the video recording.  He testified that the second image depicted the same pathway, and "the defendant with his hand kind of motioning up."  Finally, he testified that the third image depicted the defendant's "hand returning back to that same position" and "some sort of object falling on the other side of that fence."  Later, the police found plastic baggies that contained heroin and fentanyl on the other side of the fence in the area depicted in the video.

---

[1] We have viewed both video recordings.

2

The defendant contends that Officer Correa's testimony regarding the images was impermissible lay opinion because the jury were capable of viewing the images and drawing their own conclusions regarding what was depicted. We disagree.

Because the defendant objected to the testimony regarding the content of the second video recording, we review the testimony for prejudicial error. See Commonwealth v. Pina, 481 Mass. 413, 429 (2019).

A lay witness's opinion testimony "is admissible only where it is '(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge'" (citation omitted). Commonwealth v. Canty, 466 Mass. 535, 541 (2013). "Where the jury are capable of viewing video or photographic evidence and drawing their own conclusions regarding what is depicted, a lay witness's testimony about the content of the video or photographs is admissible only if it would assist the jury in reaching more reliable conclusions." Commonwealth v. Grier, 490 Mass. 455, 476 (2022).

Here, Officer Correa's testimony about what he believed the images depicted was permissible lay opinion because it was rationally based on his perception, helpful to a clear understanding of a fact in issue by connecting the baggies found

3

over the fence to the defendant, and was not based on scientific, technical, or other specialized knowledge.  See Canty, 466 Mass. at 541.  Though the jury were capable of viewing the video recording and images and drawing their own conclusions, Officer Correa's testimony assisted the jury by drawing their attention to a small object appearing briefly in the second video recording, which the jury could have otherwise overlooked.  See Grier, 490 Mass. at 476.  Importantly, Officer Correa did not express an opinion regarding what the object was or whether the defendant had thrown the object.[2]  See id. at 477 (that detective did not state opinion whether photograph depicted defendant or defendant's jacket was factor weighing toward admissibility of detective's description of photograph also available to jury).  Finally, we note that the judge twice instructed the jury that notwithstanding the testimony about the video recordings and images, in the end the jury are responsible for determining what they believe the video recordings and images depicted.  See Commonwealth v. Gomes, 443 Mass. 502, 508 (2005) ("The jury are presumed to follow the judge's instructions").  Accordingly, it was not error to allow Officer

---

[2] Indeed, the judge had ruled on a pretrial motion that Officer Correa could not refer to the defendant's actions as a "drug toss."

4

Correa's testimony regarding the images taken from the video recording. See Pina, 481 Mass. at 429.

2. Drug distribution expert testimony. Evidence at trial showed that while searching 23 King Street, police found a bag containing 196.9 grams of fentanyl and a cutting agent in the front hallway of the first floor of the building and a knotted baggie containing cocaine under the building's stairs. Outside of the second-floor apartment, police found a firearm, firearm magazines, and loose ammunition.[3] Police also seized plastic wrap and two digital scales from the defendant's second-floor apartment. Notably, the police did not find any controlled substances in the defendant's apartment.

Officer Michael Ryder testified at trial as the Commonwealth's expert witness regarding the characteristics of drug distribution. The prosecutor showed Officer Ryder the plastic wrap seized from the second-floor apartment, and asked, "In your training and experience, would this have any significance to you?" Officer Ryder answered, "Yes," and subsequently explained that drugs "would be wrapped several times in [plastic wrap], and the reason is people believe that

_____

[3] An officer working for the Worcester Police Department's Latent Print Unit analyzed latent fingerprints recovered from both plastic bags containing the firearm and ammunition and testified that it was her expert opinion that each bag bore a fingerprint belonging to the defendant.

5

it'll throw a narcotic dog off from getting the scent of it."
Officer Ryder further testified that it was common for drug
dealers to possess firearms because "they're afraid of getting
robbed from other drug dealers" and "to use against the police
if they had to flee."  He also testified regarding drug dealers'
use of drug "stashes," that "if . . . we do a search warrant on
a three-decker, apartment 2, and the stash is found in the
basement, they're hoping that we can't tie it to the second
floor."

The defendant contends that it was error to allow Officer
Ryder's testimony regarding plastic wrap and the location of
drug stashes, arguing that the testimony was not based on a
hypothetical, and rather was a judgment of the defendant's
guilt.  Further, he contends that Officer Ryder's testimony
regarding firearms was "too broad" and unfairly inflamed the
jury.  We disagree with both contentions.

We review the judge's decision to admit expert testimony
for an abuse of discretion.  Commonwealth v. Hinds, 487 Mass.
212, 218 (2021).  "Questions grounded in previously admitted
evidence may be posed to an expert witness calling for an
opinion within the expert's field of expertise, even if the
witness's reply thereby touches on the ultimate issue of the
case."  Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579
(1998).  However, the subject matter of the testimony must "be

6

within the witness's field of expertise" and "the witness may not directly express his views on the defendant's guilt." Id. "Hypothetical questions to a police officer are not per se impermissible," but a line is crossed where "the hypothetical question was transmuted into a nonhypothetical comment on the actual actors." Commonwealth v. DeJesus, 87 Mass. App. Ct. 198, 204 (2015).

To begin, the judge instructed the jury that they could decide whether to accept the testimony of an expert witness and may reject part of or all of an expert's testimony. See Gomes, 443 Mass. at 508. Further, and most significantly, the Commonwealth's expert's testimony did not stray beyond what is permissible. See Tanner, 45 Mass. App. Ct. at 579. Officer Ryder's testimony regarding plastic wrap and drug stashes was properly admitted as it was within his field of expertise and did not directly express a view on the defendant's guilt. See Tanner, 45 Mass. App. Ct. at 579. In contrast to DeJesus, 87 Mass. App. Ct. at 203-204, on which the defendant relies, wherein the prosecutor posed the exact facts of the drug transaction at issue as a hypothetical and an expert witness testified that in his opinion the person described was acting as a middle person for an individual in the shoes of the defendant, Officer Ryder's testimony did not opine as to whether the defendant committed the charged offenses. What is more, in

DeJesus the witness's answer to the subsequent question, which asked whether the hypothetical circumstances were "a common method for drug deals to take place," was admissible because it "was not an opinion on the defendant's guilt and also related to the common practice of drug dealers." See id. at 204 n.9. Officer Ryder's testimony likewise related to the common practices of drug dealers rather than stating an opinion on the defendant's guilt. See id.

We also discern no error in Officer Ryder's testimony regarding the relationship between drug dealers and firearms, which was within his field of expertise and also did not comment on the defendant's guilt.[4] See Tanner, 45 Mass. App. Ct. at 579. While the defendant relies on Commonwealth v. Ashford, 486 Mass. 450, 455 (2020), to contend that Officer Ryder's testimony was "too broad," the claim is unavailing as Ashford is easily distinguished from the expert testimony here. In Ashford, the expert testimony was introduced to "support the required element of knowledge that a specific gun was loaded," while here the expert testimony was introduced to relate a defendant's possible

---

[4] We note that Officer Ryder was not a percipient witness to the pursuit or arrest of the defendant; instead, Officer Ryder's testimony was properly confined to his explanations and opinions based on his experience investigating illegal drug distribution. See Commonwealth v. MacDonald, 459 Mass 148, 163-164 (2011).

8

access to or ownership of firearms to his possible involvement in drug distribution.  Id.

Even if Officer Ryder's testimony that a drug dealer might have a weapon "to use against the police if they had to flee" had some unfairly prejudicial effect, that testimony need not be excluded unless any unfair prejudice substantially outweighed the testimony's probative value.  See Mass. G. Evid. § 403 (2026).  Officer Ryder's testimony was probative of the reason certain items were found outside the defendant's apartment.  See Mass. G. Evid. § 401.  And, to the extent that Officer Ryder's testimony may have unfairly played to the jury's emotions by evoking violence against the police, such evocation was brief and indirect by suggesting a person fleeing the police might "use" the firearm against police.  Therefore, it was not an abuse of discretion by the judge to conclude that the testimony's probative value was not substantially outweighed by any unfair prejudice.  See Hinds, 487 Mass. at 218; Mass. G. Evid. § 403.

3.  Evidence of nonlicensure.  The defendant contends that (1) the evidence presented at trial was insufficient to prove that the defendant did not have a firearm license for purposes of the unlawful possession of a firearm and ammunitions charges, where the DCJIS employee did not testify how he spelled the defendant's name when performing the query; (2) the DCJIS

9

employee's testimony was inadmissible hearsay; and (3) the defendant's right to confront the witnesses against him was violated because the DCJIS employee lacked the requisite personal knowledge of the firearm license database.  We are not persuaded.

a.  The defendant's name.  We review a challenge for sufficiency of the evidence to support a criminal conviction for whether "there was enough evidence that could have satisfied a rational trier of fact of each . . . element beyond a reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

A DCJIS employee testified that he was asked to perform a search of the firearm license database for "a person by the name of Jose Correa."  He also testified that the database operates on a "soundex" system, "[s]o if there was anything close to what you put in, same name, date of birth,[5] first three letters the same, it would give you a list of choices that would match up to that."

To be sure, testimony that a DCJIS employee searched for a particular name and date of birth may not suffice to establish

---

[5] The Commonwealth acknowledges that the firearm license database will not return a record if the incorrect date of birth is entered.  However, because the defendant concedes that the evidence of his identification was sufficient to establish his date of birth, it is of no moment to our analysis.

10

that the defendant does not have a firearm license without some other evidence establishing the defendant's birth date. See Commonwealth v. Smith, 496 Mass. 304, 305-306 (2025). However, while there was no evidence in Smith that the birth date used to query the firearm license database was Smith's birth date, here, the defendant does not dispute whether his name is Jose Correa. See id. Instead, the defendant speculates that the DCJIS employee may have misspelled his name. Because "[p]roof beyond a reasonable doubt does not mean proof beyond all possible doubt," without some basis to believe the defendant's name was misspelled,[6] we are satisfied that there was no error. Commonwealth v. Russell, 470 Mass. 464, 477 (2015). Accordingly, the evidence was sufficient to establish that the defendant did not possess a firearm license. See Latimore, 671 Mass. at 677-678.

b. Hearsay. Testimony "that a diligent search failed to disclose a public record . . . is admissible" as an exception to the rule against hearsay if offered to prove that the record does not exist. Smith, 496 Mass. at 310, quoting Mass. G. Evid.

---

[6] Indeed, as noted supra, the DCJIS employee testified that the database would return a record if the first three letters entered are correct. Additionally, the Commonwealth entered into evidence both a satchel taken from the defendant when he was arrested that contained the defendant's Massachusetts identification card, and the Massachusetts identification card itself, which established the defendant's name and date of birth.

11

§ 803(10) (2025). To establish the requisite foundation that a diligent search failed to disclose a public record, "it is 'sufficient' if a witness is 'familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database'" (citation omitted). Id. at 311.

Here, the DCJIS employee testified regarding the process a person undergoes to apply for and obtain a firearm license, including how that license is transmitted to the Firearms Record Bureau, as well as how the employee would perform a search of the database. This established the required foundation, under the relevant hearsay exception, for the DCJIS employee to testify that a search of the firearm license database found no record that the defendant possessed a firearm license. See Smith, 496 Mass. at 311. See also Mass. G. Evid. § 803(10) (2026).

c. Confrontation clause. The Supreme Judicial Court concluded in Smith that "because the contents of DCJIS's database were not created with the 'primary purpose' of creating evidence for use at trial, . . . [a DCJIS employee's] testimony regarding the result of his search of the database did not violate the defendant's right to confront the witnesses against him." Smith, 496 Mass. at 315. Because the defendant challenges testimony regarding the very same database, the DCJIS

12

employee's testimony did not violate the defendant's right to confront the witnesses against him.  See <u>id</u>.

<u>Judgments affirmed</u>.

By the Court (Desmond, D'Angelo & Smyth, JJ.[7]),

*Paul Little*

Clerk

Entered:  June 30, 2026.

---

[7] The panelists are listed in order of seniority.